## AFSCME DISTRICT COUNCIL 88

v.

## COUNTY OF LEHIGH, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 8, 2002.
Decided April 30, 2002.
Reconsideration Denied June 19, 2002.

---

Stephen M. Van Natten, Allentown, for appellant.

Amy L. Rosenberger, Philadelphia, for appellee.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

The County of Lehigh (employer) appeals from the order of the Court of Common Pleas of Lehigh County, which denied its petition to vacate an arbitration award. The arbitrator reinstated the grievant, Lee, a Corrections Officer at the Lehigh County Prison, who was terminated for violating the Department of Corrections' Discipline Policy and Code of Ethics. The issue raised on appeal is whether the arbitrator's refusal to admit a videotape of Lee (allegedly engaging in the improper conduct leading to her termination) due to a lack of authentication substantially prejudiced employer thereby requiring that the award be vacated.

Lee was initially suspended in August 1999, and thereafter terminated in September 1999, for, *inter alia*, fraternizing with a former inmate and failing to cooperate in an internal investigation in violation of the Department's Discipline Policy and Code of Ethics.[1] As the relevant collective

---

1. The Department's Discipline Policy provides that second-class offenses, which are acts of

bargaining agreement (CBA) provided for arbitration of disputes pursuant to the rules of the American Arbitration Association (AAA), Lee's termination was eventually arbitrated when it could not be resolved through the grievance process.

The arbitration was bifurcated for the arbitrator to first rule on the admissibility of videotape that was offered by employer. According to employer, the videotape depicts a sexual encounter in a private bedroom between Lee and Terri Mason, a former Lehigh County prison inmate. Employer averred that Alyssa Martin, another County corrections officer, secretly videotaped the alleged encounter. AFSCME District Council 88 (Union) objected to the admission of the video on the grounds that: (1) it was not properly authenticated; (2) it was produced and obtained in violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–5781; and (3) it was produced and obtained in

violation of Pennsylvania's Invasion of Privacy Statute, 18 Pa.C.S. § 7507.1.

Employer argued that the video could be admitted without authentication pursuant to AAA Rule 28, which provides in part, "[t]he arbitrator shall be the judge of the relevance and materiality of the evidence offered and conformity to the legal rules of evidence shall not be necessary." In the alternative, employer sought to postpone the hearing on the admissibility of the video in order that Lee could be subpoenaed for purposes of authenticating the video.[2]

The arbitrator denied employer's request to admit the video into evidence absent authentication. According to the arbitrator, notwithstanding that the legal rules of evidence are not mandatory in an arbitration, authentication serves an important purpose.[3] The arbitrator also refused to issue the requested subpoena, concluding that it would be inappropriate considering the circumstances under which

---

such a serious nature that a first offense may lead to discharge, include fraternization with inmates as well as violations of the Department's Code of Ethics. *See* Arbitrator's opinion and award at 5–6. Fraternization includes "involvement in a non-work related relationship with an inmate." *Id.* at 6. The Code of Ethics provides in turn:

EMPLOYEE–INMATE RELATIONSHIPS

. . . .

C. Employees shall not associate or correspond with current or former inmates except as authorized by the Warden or designee; nor shall they receive gifts from inmates or former inmates or their families or their friends. Any attempt on the part of current or former inmates or their friends or families to visit, write or otherwise communicate with or send gifts to an employee shall be immediately reported by such employee to the Warden or his designee.

. . . .

G. In the event a staff member is involved in a relationship (includes family, friends, etc.,) with an individual who is subsequent-

ly incarcerated, the staff member is required to submit a written report of the same to the Warden. . . .

*Id.* at 7. Pursuant to the relevant collective bargaining agreement (CBA), employer could not take any disciplinary action against an employee without just cause.

2. As of the time of the hearing on the admissibility of the video, employer's efforts to locate Martin and serve a subpoena to secure her testimony were unsuccessful. In addition, employer failed to subpoena Lee since she had attended the previous hearings and employer's counsel told the union's counsel that he intended to call Lee as a witness to authenticate the video.

3. In reaching this conclusion, the arbitrator rejected as insufficient the Warden's hearsay testimony regarding his conversation with Martin when she gave him the video. According to the Warden, Martin told him that she and Mason conspired to film the encounter between Lee and Mason, and that she was hiding in the bedroom closet when she made the video.

.

the video was allegedly made. Since employer could not authenticate the video, it was not admitted.

Regarding the merits, the arbitrator found that while the evidence demonstrated that Lee had more contact with Mason than she disclosed to employer during its investigation, the evidence did not demonstrate that Lee had a current sexual relationship with Mason. Therefore, the arbitrator concluded that employer failed to prove that Lee was "fraternizing" with Mason in violation of the Discipline Policy. In addition, accepting Lee's testimony that she only had a "one-night stand" with Mason ten years before she became a corrections officer, the arbitrator concluded that Lee's failure to report this relationship did not violate the Code of Ethics. In doing so, the arbitrator concluded that the Code of Ethics only required a prison employee to report current relationships or those within close proximity to the time the inmate is imprisoned. However, based upon Lee's inconsistent testimony at the hearing and the responses she gave to prison officials during the investigation, the arbitrator concluded that Lee failed to cooperate with employer's internal investigation in violation of the Discipline Policy. Based upon this finding, the arbitrator concluded that a suspension was more appropriate than termination. Accordingly, the arbitrator modified the discipline and ordered Lee reinstated with full seniority and backpay.

█ Common pleas denied employer's subsequent petition to vacate or modify the award and the present appeal followed. On appeal, employer argues that the award should be vacated under 42 Pa.C.S. § 7314 because the arbitrator's refusal to

either admit the videotape into evidence absent authentication or issue a subpoena to Lee in order that she could authenticate the videotape denied the County a "fair and complete opportunity" to present its case, thereby substantially prejudicing its rights. Employer also argues that the arbitrator's erroneous evidentiary rulings [4] command the conclusion that the award is not rationally derived from the CBA.

█ Judicial review of grievance arbitration awards conducted pursuant to a collective bargaining agreement between a public employer and its employees is governed by the Uniform Arbitration Act (UAA), 42 Pa.C.S. §§ 7301–7362. *Greater Nanticoke Area Sch. Dist. v. Greater Nanticoke Area Educ. Ass'n*, 760 A.2d 1214, 1216 (Pa.Cmwlth.2000). *See also Community College of Beaver County v. Community College of Beaver County, Soc'y of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). At the outset, it is important that we correct the misconception held by the union, employer and common pleas. This case does not raise an issue *regarding the proper interpretation* of the CBA. Consequently, the essence test, embodied in 42 Pa.C.S. § 7302(d), is not applicable. Rather, the issue raised, that is, whether the arbitrator's evidentiary rulings pertaining to the controversial videotape substantially prejudiced employer, requires application of the standard set forth in Section 7314 of the UAA. Section 7314 states, in part:

(1) On application of a party, the court shall vacate an award where:

. . . .

(iv) the arbitrators refused to postpone the hearing upon good cause be-

---

**4.** According to employer, these errors consist of requiring authentication of the videotape prior to its admission into evidence, a requirement found in Pa. R.E. 901, and refusing to

issue a subpoena for Lee's testimony, which employer contends is permissible under Pa. R.E. 611(b).

ing shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; ...

42 Pa.C.S. § 7314(a)(1)(iv). Thus, we must determine whether the arbitrator's evidentiary rulings substantially prejudiced employer's rights. After a review of the record, we conclude they did not.

■ Generally, relevant evidence with sufficient indicia of reliability should be admitted. However, the determination of the probative value and reliability of evidence are left to the sound discretion of the arbitrator. And, as the parties correctly note, the arbitrator is not bound by the Pennsylvania Rules of Evidence. *See* Labor Arbitration Rule 28. Therefore, an arbitrator is not precluded from admitting hearsay or unauthenticated evidence. This does not mean, however, that the arbitrator cannot exercise discretion in admitting evidence and must admit all evidence offered, including the unauthenticated videotape. Authentication is required in the civil and criminal setting when a party offers demonstrative evidence that purports to illustrate or depict an event, condition, place or person connected in some manner to the litigation. Pa. R.E. 901. Authentication serves to verify that the demonstrative evidence accurately represents that which it purports to be. *See* Packel and Poulin, Pennsylvania Evidence 867 (Comment to Rule 901) (2nd Ed.1999). Moreover, the admission of such evidence lies within the discretion of the trial judge, or in this case, the arbitrator. *See generally Nyce v. Muffley,* 384 Pa. 107, 119 A.2d 530 (1956) (admission of photographs largely within discretion of trial judge).

Here, since the time in which the alleged relationship between Lee and Mason oc-

curred was critical to determining whether Lee violated work rules, and the videotape was made in a highly unusual manner, we conclude the arbitrator did not abuse her discretion in failing to admit the tape absent testimony concerning the time, place and circumstances surrounding its creation. Consequently, as her ruling was sound, it cannot be said to be prejudicial to the rights of employer within the meaning of Section 7314.

■ Similarly, we conclude that the arbitrator's refusal to postpone the hearing and issue a subpoena was not an abuse of discretion causing substantial prejudice to employer's rights. As common pleas stated:

> The arbitrator concluded that Officer Lee was not in a position to authenticate the videotape because the videotape was recorded without her knowledge and the videotape was never in Officer Lee's custody or control. Consequently, there was no good cause shown for a continuance of the arbitration in order to afford the Petitioner time to subpoena [ ] Lee.

*AFSCME District Council 88 v. County of Lehigh,* No.2001–C–1288, slip op. at 7 (C.C.P. Lehigh County, September 18, 2001). Since the probative value of Lee's testimony if subpoenaed and asked to authenticate the video was doubtful, the arbitrator did not abuse her discretion in denying the continuance and requested subpoena. Not only was the arbitrator's ruling within her discretion at the time it was made, later events make clear beyond peradventure that employer was not prejudiced by the ruling. As Arbitrator Cooper noted:

> Employer [sic] counsel made the offer of proof (at the Union's request) that if the grievant were called to authenticate the tape, and if she testified honestly, she would say that the tape was a fair and accurate depiction of the grievant and

Terri Mason, then a former inmate of Lehigh County Prison.

Arbitration Award, Case No. 14–390–01717–99, slip op. at 8 (April 13, 2001). Although a continuance and subpoena were denied, Lee did, in fact, appear and testify at the second hearing. Had she been willing to admit engaging in the activities depicted on the videotape at the time employer asserted that it was made, admission of the tape itself would have been entirely unnecessary. However, her actual testimony was not as employer hoped in its proffer, and thus would not have provided the foundation necessary for authentication.

Based on the above conclusions, we hold that employer's rights during the grievance arbitration were not substantially prejudiced and employer had a fair and full opportunity to present its case in support of termination. Accordingly, the order of common pleas is affirmed.

### ORDER

AND NOW, this 30th day of April, 2002, the order of the Court of Common Pleas of Lehigh County in the above captioned matter is AFFIRMED.